DEPARTMENT OF HEALTH, STATE OF NEBRASKA, APPELLANT, V. COLUMBIA WEST CORPORATION, A DELAWARE CORPORATION, ET AL., APPELLEES.

420 N.W.2d 314

Filed March 18, 1988.   No. 86-227.

Robert M. Spire, Attorney General, and Marilyn B. Hutchinson, for appellant.

Lavern R. Holdeman, for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

WHITE, J.

This is an appeal from a judgment of the district court for Lancaster County affirming the decision of the Certificate of Need Appeal Panel of the Nebraska Department of Health. The Certificate of Need Appeal Panel reversed a decision of the Certificate of Need Review Committee.

At issue here, essentially, is whether appellee Columbia West Corporation should be permitted to purchase from Valley View Care Centre, Inc., a nursing home facility of 112-bed capacity at a price of $20,000 per bed, or $2,240,000. Valley View is an intermediate-care facility, described in the Nebraska Health Care Certificate of Need Act (Neb. Rev. Stat. §§ 71-5801 to 71-5872 (Reissue 1986)) as an

institution or facility which provides, on a regular basis, health related care and services to individuals who do not require the degree of care and treatment which a hospital or skilled nursing facility is designed to provide, but who, because of their mental or physical condition, require health related care and services above the minimum level of room and board.

§ 71-5819.

The acquisition of Valley View by Columbia West requires

the approval of the agencies of the health department since Valley View has received, and at the time of the application was receiving, federal or state reimbursement for care to patients. § 71-5830. The Legislature authorized, and the department has enacted, extensive rules for conducting reviews of the certificate of need applications. § 71-5851; Neb. Admin. Code tit. 182, ch. 2 (1983).

The statutory procedure after the initial decision of the review committee and upon the consideration by the appeal panel varies as to the burden of proof, depending on whether the certificate was granted or denied by the review committee. Where, as here, the committee denied the certificate, the burden was on the applicant to prove to the appeal panel that the application met the "applicable criteria." § 71-5865.

It is from the decision of the panel, that the application did meet the applicable criteria, that the appeal was taken to the district court. Appeals from a decision of the panel to the district court are subject to the Administrative Procedures Act, Neb. Rev. Stat. § 84-917 (Cum. Supp. 1984), and the review is limited in scope.

The appeal to this court is, however, de novo on the record. Neb. Rev. Stat. § 84-918 (Reissue 1981). In *Haeffner v. State*, 220 Neb. 560, 371 N.W.2d 658 (1985), we concluded that regardless of the incongruity of a true de novo review of a district court review for error only, we had no choice save to follow the legislative mandate. Whether this review in fact constitutes this court as a super-agency as to the administrative decisions of the agencies subject to § 84-918 is beside the point. We therefore proceed to review the matter de novo, reaching a decision independent of all dispositions that have gone before.

The assignments of error are then reduced to a single question, i.e., Has the applicant, Columbia West, satisfied the criteria necessary to entitle it to a certificate of need authorizing the purchase of the nursing home?

It is important to note that the population's need for the 112-bed facility is not at issue; nor does the applicant question whether, in exchange for the receipt of public money, regulation of the sale of health facilities is authorized by law. The sole question is whether the purchase price negotiated between

private owners must be disapproved if the resulting entity violates any of the material criteria. The review criteria specified in Neb. Admin. Code tit. 182, ch. 2, § 005 (1983), which are in dispute are as follows:

005.02A Alternatives.
. . . .

005.02A2 The applicant must demonstrate that the proposed project is the least costly of the alternatives for meeting the need established under part 005.01A above, or if it is not the least costly, that it is the most effective alternative for meeting such need. . . .

005.02B Cost.

005.02B1 Any increase in costs or charges (to any class of payers or to all payers) resulting from the proposed project must be justified by the needs of the population established under part 005.01A above which will be met by the project. In estimating increases in costs or charges which will result from the proposed project, capital costs, operating costs, projected utilization of the proposed services, and any other factors bearing on future costs or charges shall be considered.

005.02B2 Increases in costs may be justified in part where improvements or innovations in the financing and delivery of health services will foster competition and promote quality assurance and cost effectiveness for consumers and payers.

005.02C Financial Feasibility.

005.02C1 The resources and proposed means of financing the proposed project must in fact be available.

005.02C2 It must be reasonably certain that the proposed project will be financially feasible for the period of life of the assets.

A preliminary issue in this case is the applicability of these criteria to purchases of existing care facilities. Neb. Admin. Code tit. 182, ch. 2, § 005 (1983), states: "The applicant bears the burden of demonstrating in its application that the proposal satisfies all of the review criteria in this section which are appropriate and significant to the proposal in order to be granted a certificate of need." The review criteria were thus

drafted to cover a range of applications and were not intended to be entirely relevant to all.

Citing § 005.02A2, the appellant, Department of Health, argues that the proposed purchase is not the least costly alternative. The appellant maintains that either the status quo should be maintained, forcing the present owner to continue operating the facility, or the buyer could purchase the facility for less money. The appellant then demonstrates several valuation methods as evidence of "alternative" purchase prices. The appellant's argument is misguided.

On its face, § 005.02A2 appears to be primarily concerned with new construction projects. In this regard Neb. Admin. Code tit. 182, ch. 2, att. 4, § C2a (1983), informs the applicant to "[i]nclude comparisons of financing alternatives, construction alternatives, and energy alternatives for construction projects." The purpose of § 005.02A2 is to ensure that all economically viable alternatives to meet an established need are weighed and considered. The alternatives contemplated by this section do not include price alternatives for the acquisition of an existing facility. To have an alternative means to have a choice between two or more things. An applicant who wishes to purchase an existing facility is presumably not free to choose the purchase price. To say that this section mandates a purchase price other than the one agreed to between a willing buyer and a willing seller simply ignores economic reality. We therefore hold that where, as here, the need for an existing health care facility is not disputed and a willing buyer and a willing seller have agreed upon a price for that facility, § 005.02A2 is not a relevant review criterion in the application for a certificate of need.

The price to be paid for an existing facility does become relevant under § 005.02B, however, when it results in higher costs for consumers and payers. An increase in such cost must be justified by the need. The appellees argue that since the cost increase justification criterion is dependent upon a showing of need and need is not at issue here, § 005.02B should not apply. We disagree. While it is true that the need for the Valley View health care facility is not disputed, an increase in the price to consumers must nevertheless be considered. Section 005.02B1

specifically applies to "[a]ny increase in costs or charges (to any class of payers or to all payers) resulting from the proposed project . . . ." Furthermore, promotion of a more competitive health care delivery system is among the stated purposes of the Nebraska Health Care Certificate of Need Act. See § 71-5802.

Section 005.02B2 provides ways in which increases in cost may be justified, but the examples are not all-inclusive. The section deals with "improvements or innovations in the financing and delivery of health services" but does not discuss increased costs as they relate to the acquisition of an existing facility. In this regard, however, Neb. Admin. Code tit. 182, ch. 2, att. 4, § C2b (1983), gives some guidance. The applicant is advised to "[c]ompare such costs and charges to those of other similar facilities or services if information is available about other facilities."

In light of the foregoing, we hold that § 005.02B is applicable to the acquisition of an existing health care facility if the acquisition involves any increase in cost to consumers. The increase in cost is justified if it is reasonable when compared to preacquisition rates for the same facility and rates of other similar facilities in the area.

The applicant in this case presented evidence concerning projected revenues and costs of operating the facility. The projections acknowledge the existing Medicaid reimbursement limitations and project increases for private-pay residents at 5 percent per year to account for inflation. The projections show that a reasonable profit margin can be maintained despite the increase in capital costs resulting from the purchase price of the facility. We also note here evidence that in this case we deem persuasive, i.e., that the proposed increased costs to both public and private patients will result in less costly care than the rates of other intermediate-care facilities in the immediate area. We therefore find that the increased costs are reasonable and the applicant has met the burden of § 005.02B.

The applicability of § 005.02C is not disputed. The applicant has demonstrated in its evidence both the means of financing and the fact that it will be able to maintain an adequate cash flow for the period of life of the assets, using only an inflationary increase in costs. We are satisfied that the plan is

feasible and find that the applicant has met the burden of § 005.02C.

Having thus concluded de novo that the applicant met its appropriate burden, we affirm the decision of the district court.

AFFIRMED.